

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00631-CV

**IN THE INTEREST OF A.B.R.**, a Child

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2018PA02483
Honorable Susan D. Reed, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:       Rebeca C. Martinez, Justice
               Irene Rios, Justice
               Liza A. Rodriguez, Justice

Delivered and Filed: March 11, 2020

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her child,

Amy.[1]  Mother challenges the sufficiency of the evidence supporting the trial court's finding that

termination was in the child's best interest as well as the sufficiency of the evidence supporting

the statutory predicate grounds for termination.  We affirm the trial court's order.

### BACKGROUND

The Texas Department of Family and Protective Services (the "Department") initially

became involved in the underlying case when the Department received a report that Amy's

---

[1] To protect the identity of a minor child in an appeal from an order terminating parental rights, we refer to the parents as "Mother" and "Father" and the child by the alias "Amy."  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).  The trial court's order terminates both Mother's and Father's parental rights to Amy, but only Mother appeals the trial court's order.

meconium tested positive for opiates, methadone, amphetamine, and cocaine and that Mother also tested positive for opiates, methadone, amphetamine, and cocaine at the time of Amy's birth on February 20, 2018. Amy remained hospitalized for approximately three months, during which time she experienced withdrawal symptoms and was treated for a heart condition. Amy's maternal grandmother ("Grandmother") cared for Amy upon her release from the hospital. On November 2, 2018, the Department filed a petition to terminate parental rights.

The trial court held a bench trial on September 9, 2019, at which Mother appeared in person and testified on her own behalf. The trial court also heard testimony from Father, Grandmother, and Department caseworkers Beverly Garza and April Musquiz. On September 9, 2019, the trial court signed an Order of Termination terminating Mother's parental rights to Amy.

### ANALYSIS

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 161.001(b), 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In this case, the trial court found evidence of six predicate grounds to terminate Mother's parental rights, specifically Texas Family Code sections 161.001(b)(1)(D), (E), (N), (O), (P), and (R). The trial court also found termination of Mother's parental rights was in the child's best interest.

Mother contends the evidence is legally and factually insufficient to support the trial court's finding of statutory grounds for the termination of her parental rights pursuant to Texas Family Code sections 161.001(b)(1)(D), (E), (P), and (R).[2] Mother additionally contends the evidence is

---

[2] Mother's brief does not challenge the trial court's finding of statutory grounds for the termination of her parental rights pursuant to Texas Family Code sections 161.001(b)(1)(N) or (O).

legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the child's best interest.

**Standard of Review**

When reviewing the sufficiency of the evidence, we apply the well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency). Further, in a trial to the bench, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Health Tronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 582 (Tex. App.—Austin 2012, no pet.). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We therefore defer to the trial court's judgment regarding credibility determinations. *Id.* at 823-24. While we must detail the evidence relevant to the issue of parental termination when *reversing* a finding based upon insufficient evidence, we need not do so when *affirming* a verdict of termination. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

**Statutory Grounds for Termination**

Along with a best interest finding, a finding of only one statutory ground under section 161.001(b)(1) is sufficient to support a judgment of termination. *In re A.R.R.*, No. 04-18-00578-CV, 2018 WL 6517148, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.); *see also In re A.V.*, 113 S.W.3d at 362. On appeal, an appellant must challenge each of the statutory grounds upon which the trial court based its termination order. *In re S.J.R.-Z.*, 537 S.W.3d 677, 682 (Tex. App.—San Antonio 2017, pet. denied). When, as here, an appellant does not challenge

each of the grounds that may support a termination order, we generally need not address the sufficiency of the evidence of any of the statutory grounds for termination. *Id.* Rather, we accept the validity of the unchallenged grounds and affirm the termination order. *Id.*

However, termination under subsection 161.001(b)(1)(D) or (E) may have implications for a parent's parental rights to other children, so therefore, we must address issues challenging a trial court's findings under those subsections. *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019). Accordingly, we consider Mother's sufficiency challenge to the trial court's findings regarding subsections D and E even though she does not challenge termination under subsections N and O. *See In re L.C.*, No. 12-19-00137-CV, 2019 WL 4727826, at *2 (Tex. App.—Tyler Sept. 27, 2019, no pet.) (mem. op.) (addressing the parents' sufficiency challenges to subsections D and E even though they did not challenge each of the grounds upon which termination could be supported).

The trial court found evidence Mother "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child … [and] engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child … ." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). While both subsections D and E focus on endangerment, they differ regarding the source and proof of endangerment. Subsection D concerns the child's living environment, rather than the conduct of the parent, though parental conduct is certainly relevant to the child's environment. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Under subsection E, the cause of the endangerment must be the parent's conduct and must be the result of a conscious course of conduct rather than a single act or omission. *Id.*

### Statutory Subsection D

The statutory ground for termination found in subsection D allows for termination of parental rights if the parent "knowingly placed or knowingly allowed the child to remain in

conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). The child's "environment" encompasses the suitability of the child's living conditions and the conduct of parents or others in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "Inappropriate, abusive, or unlawful conduct by a parent or other persons who live in the child's home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection D." *Id.* "[A] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Subsection D permits termination based upon only a single act or omission. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

Under subsection D, the trial court examines "evidence related to the environment of the [child] to determine if the environment was the source of endangerment to the [child]'s physical or emotional well-being," although parental conduct can be a factor that contributes to this environment. *J.T.G.*, 121 S.W.3d at 125. The relevant period for review of conduct and environment supporting termination under statutory ground D is before the Department removes the child. *In re J.R.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.). However, "a fact-finder may infer from past conduct endangering the well-being of a child that similar conduct will recur if the child is returned to the parent." *In re D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.—San Antonio 2012, no pet.).

### Statutory Subsection E

Subsection E permits termination if the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Under subsection E,

endangerment encompasses "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Instead, endanger means to expose the child to loss or injury or to jeopardize his emotional or physical well-being. *Id*. The trial court must determine "whether evidence exists that the endangerment of the child's physical well-being was the direct result of [the parent's] conduct, including acts, omissions, or failures to act." *In re M.E.–M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied); *S.M.L.*, 171 S.W.3d at 477. "It is not necessary that the parent's conduct be directed at the child or that the child actually be injured; rather, a child is endangered when the environment or the parent's course of conduct creates a potential for danger which the parent is aware of but disregards." *S.M.L.*, 171 S.W.3d at 477. Courts may further consider parental conduct that did not occur in the child's presence, including conduct before the child's birth or after he was removed from a parent's care. *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *4-5 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.).

***Discussion***

We consolidate our analysis of subsections D and E because the evidence concerning those two grounds is interrelated. *See J.T.G.*, 121 S.W.3d at 126.

Amy was born on February 20, 2018, and was approximately one year and six months' old at the time of the trial. Beverly Garza, who served as the Department caseworker until November 2018, testified that upon Amy's birth, her meconium tested positive for opiates, methadone, amphetamines, and cocaine. Mother denied the use of drugs with the exception of methadone for which Mother testified she had a prescription. However, Garza testified that Mother tested positive for opiates, amphetamines, and cocaine, in addition to methadone, at the time of Amy's birth. Mother testified she has not used drugs during the pendency of the case. However, according to

Garza, Mother admitted that she had a drug problem and admitted to the use of heroin and cocaine. Mother informed Garza she went to detox in July 2018 at San Antonio Behavioral Hospital.

Garza testified Mother was referred to both drug and alcohol assessment through OSAR.[3] However, Mother failed to attend the first four referrals. Mother attended the fifth referral, at which time it was recommended Mother continue methadone treatment through MedMark. Garza testified that Mother reported during her OSAR assessment that she had not recently used drugs. According to Garza, however, that assessment occurred before a September 27, 2018 hair follicle test with a positive result.

April Musquiz, the Department caseworker beginning in April 2019 through the trial date, testified Mother told Musquiz that she entered outpatient treatment through Lifetime Recovery in February 2019. However, Mother was discharged from the drug treatment program in July 2019 for positive results on urinalysis tests, as well as for excessive absences and not setting up appointments. Musquiz further testified that Mother admitted to Musquiz that she relapsed in February 2019 by using methamphetamine, amphetamines, opiates, cocaine, and heroin at least twice. On May 1, 2019, Mother failed to show up for a scheduled drug test. Musquiz scheduled Mother for a drug test on August 28, 2019, but Mother told Musquiz the testing facility did not have the paperwork — a situation Musquiz verified to be false.

Evidence of illegal drug use supports a conclusion that a child's surroundings endanger his or her physical or emotional well-being. *See In re G.A.*, No. 01-11-00565-CV, 2012 WL 1068630, at *6 (Tex. App.—Houston [1st Dist.] Mar. 29, 2012, pet. denied) (mem. op.) (a parent's drug use can endanger a child's physical or emotional well-being); *J.T.G.*, 121 S.W.3d at 125 (parent's illegal drug use supports conclusion that environment endangers physical or emotional well-being

---

[3] Outreach, Screening, Assessment, and Referral

of children). Moreover, drug use during pregnancy constitutes conduct that endangers a child. *In re Z.H.*, 05-17-001146-CV, 2018 WL 915029, at \*3, (Tex. App.—Dallas Feb. 16, 2018, no pet.) (mem. op.); *J.T.G.*, 121 S.W.3d at 125; *see also In re K.L.B.*, No. 14-09-00061-CV, 2009 WL 3444833 (Tex. App.—Houston [14th Dist.] July 16, 2009, no pet.) (mem. op.) (mother tested positive for drugs when child born prematurely); *In re B.R.*, No. 02-11-0146-CV, 2011 WL 5515502 (Tex. App.—Fort Worth Nov. 10, 2011, no pet.) (mem. op.) (mother used drugs while pregnant and was high when she gave birth). Additionally, "[d]rug abuse and its effect on the ability to parent can be part of an endangering course of conduct." *In re A.A.M.*, 464 S.W.3d 421, 426 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

Viewing all the evidence in the light most favorable to the trial court's judgment, we conclude a reasonable trier of fact could have formed a firm belief or conviction Mother "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child … [and] engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child … ." Thus, the evidence is legally sufficient to support these findings. Further, after considering the entire record, including any disputed or contrary evidence, we conclude the evidence is factually sufficient to support the trial court's termination findings under Sections 161.001(b)(1)(D) and (E).

Having determined the evidence is legally and factually sufficient to support the trial court's finding on these statutory grounds, we need not consider whether the evidence would support subsections (N), (O), (P), or (R). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

### The Child's Best Interest

When considering the best interest of the child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In*

*re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a child's parent is willing and able to provide the child with a safe environment, we consider the factors set forth in Family Code section 263.307(b). *See* TEX. FAM. CODE ANN. § 263.307(b). We also consider the *Holley* factors in our analysis.[4] *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id*. In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—

---

[4] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

Grandmother testified that she and Amy have bonded. While Amy was hospitalized, Grandmother visited and was involved with her care. Grandmother comforted Amy in the hospital as she experienced withdrawal symptoms, as well as for the eight months following her discharge. Grandmother described Amy as a really smart child who runs, plays, and eats a lot. Amy attends day care three days a week for four hours each day. According to Grandmother, Amy does not like Grandmother to leave her at day care but "lights up" when Grandmother picks her up. Musquiz described Amy as a happy baby who is bubbly and smiles. Grandmother testified that Amy has a heart condition that requires regular visits for electrocardiograms. Amy also undergoes physical therapy and specified services treatment. According to Grandmother, Mother has not asked any questions about Amy's medical condition or treatment. Grandmother related that she is willing to adopt her granddaughter. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (stating that a factfinder may consider whether children have bonded with foster family and are well-cared for when children are too young to express their desires).

Garza testified Mother visited Amy only two to three times between April 2018 and November 2018 but could have visited Amy daily. Musquiz testified Mother visited Amy only five times between April 2019 and the time of the trial, when Mother could have visited weekly. *In re R.B.*, 200 S.W.3d 311, 316 (Tex. App.—Dallas 2006, pet. denied) (indicating that a parent's missed visits serve as an example of acts or omissions indicating termination is in the children's best interests).

According to Mother, she completed all of her services except outpatient treatment. Mother testified she completed her parenting class and provided a certificate to Musquiz. Musquiz acknowledged that Mother provided a certificate showing she attended parenting classes but

testified Mother provided that certificate on the day of trial. Therefore, Musquiz was not able to verify Mother's attendance or completion. Musquiz also testified that Mother did not complete individual counseling as required by her service plan.

Mother admitted she did not complete outpatient therapy. Mother explained she tested positive for "Benzos" and opiates but that she has prescriptions for Xanax and methadone, which account for the positive results. Mother admitted, however, she was not able to provide recent prescriptions for the medications, which she explained was due to her doctor electronically sending the prescriptions to the pharmacy. As detailed above, Mother was also discharged from her outpatient drug treatment for several reasons, tested positive for drug use, and admitted to both Garza and Musquiz that she used illegal drugs during the pendency of the case despite her testimony otherwise. *In re D.M.M.*, No. 14-16-00664-CV, 2017 WL 61847, at *5 (Tex. App.—Houston [14th Dist.] Jan. 5, 2017, pet. denied) (mem. op.) ("Continued illegal drug use [by the parent] ... is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct, and that termination is in the best interest of the child.").

Mother also did not have stable housing. Musquiz testified Mother informed her that she had been living with her father but became "stressed" in her father's home so she moved into a hotel. *In re S.B.*, 207 S.W.3d 877, 887-88 (Tex. App.—Fort Worth 2006, no pet.) (considering the parent's drug use, inability to provide a stable home, and failure to comply with a family-service plan in holding the evidence supported the best-interest finding).

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re H.R.M.*, 209 S.W.3d at 108; *In re J.P.B.*, 180 S.W.3d at 573; *see also*

*generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing an appellate court need not detail the evidence if affirming a termination judgment).

## CONCLUSION

For the foregoing reasons, we affirm the trial court's order terminating Mother's parental rights.

Irene Rios, Justice